Joseph CARR, in his official capacity as President of Northern Westchester Putnam Assistance to Mother and Unborn Child, Inc., Plaintiff,

v.

David AXELROD, M.D., in his capacity as Commissioner of Health of the State of New York, and Robert Abrams, Attorney General of the State of New York, Defendants.

The PEOPLE OF THE STATE OF NEW YORK, by Robert ABRAMS, Attorney General of the State of New York, Plaintiff,

v.

NORTHERN WESTCHESTER PUTNAM ASSISTANCE TO MOTHER AND UNBORN CHILD, INC., d/b/a Alternative Pregnancy Center, and Joseph Carr, Individually and as President of Northern Westchester Putnam Assistance to Mother and Unborn Child, Inc., Defendants.

Nos. 92 Civ. 0305 (GLG), 92 Civ. 0509 (GLG).

United States District Court, S.D. New York.

July 15, 1992.

---

A. Lawrence Washburn, Jr., New York City, Bleakley Platt & Schmidt, White Plains, N.Y. (William P. Harrington, Jr., of counsel), for Carr and Alternative Pregnancy Center.

Robert Abrams, Atty. Gen., State of N.Y., Bureau of Consumer Frauds and Protection, Poughkeepsie, N.Y. (G. Nicholas Garin, of counsel), for New York and the State defendants.

## OPINION

GOETTEL, District Judge:

While *Roe v. Wade,* 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), has been re-affirmed, the effect of the Supreme Court's decision in *Planned Parenthood of Southeastern Pennsylvania v. Casey,* —— U.S. ——, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992), has been simply to shift the battle-grounds for the abortion wars to the states who are now vested with the limited power to regulate abortions. A novel front has opened up in New York, a state which has relatively few restrictions upon abortion, where the skirmish concerns the application of consumer protection laws to the creative attempts of anti-abortion groups to reach women seeking abortions. A state enforcement proceeding, removed to federal court, and a federal action, filed to enjoin that state proceeding, have combined to create a question which goes to the very heart of the federal court's responsibility to decide federal questions.

## I. BACKGROUND

On January 14, 1992, the Attorney General of the State of New York filed suit in the state supreme court against the Alternative Pregnancy Center ["APC"] and Joseph Carr, President of the Northern Westchester Putnam Assistance to Mother and Unborn Child, Inc., alleging that the defendants had violated New York laws concerning the practice of medicine, operation of clinical laboratories, and consumer protection. The APC is run by an anti-abortion organization. Its goal is to counsel women considering abortions and persuade them to carry the pregnancy to term. The Center

advertises its services in local papers and in phone directories where it can be found under the headings Abortion Information Services, Health Care Services, and Birth Control Information Centers.

A woman who believes she is pregnant can contact APC. She will be invited in for a pregnancy test and counseling. These services are offered free of charge. The client provides information about her medical history and current symptoms and provides urine for a pregnancy test. Allegedly, she is then shown pictures and diagrams concerning fetal development and a slide presentation which depicts failed abortions. According to APC, the thrust of the presentations is to show the risks and dangers of abortion as contrasted with the safe alternatives, i.e., full-term pregnancy. The State's complaint alleges that the clients are also given a lecture against abortion based on morality and that the atmosphere of all of this activity is coercive and disturbing.

On November 27, 1991, the Attorney General, as required by state statute, mailed a "Notice of Proposed Litigation" to APC charging it with a variety of allegedly fraudulent and deceptive practices in connection with their operation of the pregnancy center. In response, APC's attorney contacted Assistant Attorney General G. Nicholas Garin and requested a chance to discuss the allegations made by the State. A meeting took place on December 17, 1991 and at its conclusion, Garin was told he would be advised of APC's position. APC responded, by letter, on December 31, 1991, agreeing to alter some of its practices as suggested by the Attorney General's office but refused to change the name of its organization or the content of its advertising, and declined to pay any civil penalties. APC's letter also specifically reserved APC's right to bring suit should the discussions fail to produce a satisfactory resolution of this dispute.

On January 14, 1992, the Attorney General's office served APC and Mr. Carr with a summons, a complaint, and a motion for preliminary injunction. That same day, Joseph Carr filed suit in federal court against New York's Attorney General and Commissioner of Health, alleging that his civil rights were violated by the State's enforcement suit. On January 22, 1992, before the preliminary injunction motion was heard in state court, Carr and APC filed a petition of removal pursuant to 28 U.S.C. § 1443(1), removing the state action to federal court.

Several motions have been presented for our consideration. We will address two: the State's motion to remand the enforcement proceeding and the State's motion to dismiss the federal suit.

## II. REMAND OF THE STATE ENFORCEMENT PROCEEDING

■ Section § 1443(1) of Title 28 allows removal by the defendant to the district court of any state action "against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States." 28 U.S.C. § 1443(1). After an enforcement proceeding was filed by New York state against APC and Carr, defendants removed that case to federal court. *People v. Northern Westchester Putnam Assistance to Mother and Unborn Child, Inc.*, 92 Civ. 0509. In their removal petition, the defendants contend that the State knew that they intended to file a federal suit alleging that their first amendment rights were violated by the enforcement of unconstitutional state laws. Defendants' position is that they have a right to try their federal claims in a federal court under 42 U.S.C. § 1985(3). This right, they maintain, was denied by the commencement of the state court action. APC and Carr suggest that the timing of the state's filing is so suspiciously close to the filing of Carr's case in federal court as to lead to the inference that the State case was filed only to preclude Carr's prosecution of a federal civil rights case. Notably, the defendants' theory of deprivation is wholly grounded on the assumption that the federal court must necessarily abstain from hearing the merits of Carr's case during the pendency of the state proceeding. Though we feel it is inappropriate for any plaintiff to base its legal argument on a guess about a decision

yet to be rendered by the court, as will be seen later, abstention in the federal case is the proper step by this court.

■ An enforcement proceeding may be removed pursuant to 28 U.S.C. § 1443(1) only if the defendants can show that the right upon which they rely is a right under a law providing for equal civil rights and that this right will be denied or cannot be enforced in the courts of New York. *Georgia v. Rachel*, 384 U.S. 780, 788, 86 S.Ct. 1783, 17, 16 L.Ed.2d 925 (1966). Carr and APC assert that 42 U.S.C. § 1985(3) protects their right to a federal forum in which to try their federal claims.

In order to raise a claim under § 1985(3), the defendants must show that the State 1) engaged in a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons the equal protection of the laws, or the equal privileges and immunities under the laws; 3) acted in furtherance of the conspiracy; and 4) deprived such person or class of persons the exercise of any right or privilege of a citizen of the United States. *New York State National Organization for Women v. Terry*, 886 F.2d 1339, 1358 (2d Cir.1989), *cert. denied*, 495 U.S. 947; 110 S.Ct. 2206, 109 L.Ed.2d 532 (1990). We will assume, without deciding this issue, that Carr and APC belong to a class within the ambit of § 1985(3) by virtue of their philosophical positions concerning abortion.

■ The defendants' claim fails because they cannot show that they have been deprived of a "right under a law providing for equal civil rights." 28 U.S.C. § 1443(1). They focus their attention on the "privileges and immunities" clause of § 1985(3) and argue that one of the privileges and immunities of United States citizenship is the right to obtain a federal forum for federal questions they wish to assert. There is simply no civil right to

have a federal claim heard by a federal court unless exclusive jurisdiction over a federal cause of action has been vested in the federal courts. Where the federal courts do not have exclusive jurisdiction, due process requires only that some court, state or federal, be available to hear claims. *Battaglia v. General Motors*, 169 F.2d 254, 257 (2d Cir.), *cert. denied*, 335 U.S. 887, 69 S.Ct. 236, 93 L.Ed. 425 (1948). The privileges and immunities of national citizenship do not, as plaintiff contends, encompass the right to have a federal question heard in a federal forum.[1] Moreover, there are no federal statutes conferring upon a citizen absolute access to a federal court. We agree that a case raising a federal question may be asserted in a federal court—however, 28 U.S.C. § 1331 is a jurisdictional statute, not a statute conferring equal civil rights upon the citizens of the United States.

■ In *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 84 S.Ct. 461, 11 L.Ed.2d 440 (1964), the Supreme Court held that if in a state proceeding a party explicitly reserves his or her right to return to federal court to have a federal question adjudicated, that party may return to district court upon the conclusion of the state proceeding. However, in *Temple of the Lost Sheep Inc. v. Abrams*, 930 F.2d 178 (2d Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 193, 116 L.Ed.2d 153 (1991), this right was limited to *Pullman* abstention cases. In *Temple of the Lost Sheep*, the state began an administrative investigation of the plaintiffs to determine whether fraud was being conducted under the guise of charitable activity. The plaintiffs then initiated a federal suit, alleging violations of their constitutional rights under 42 U.S.C. § 1983. The district court abstained on the basis of *Younger v. Harris*, 401 U.S. 37, 91 S.Ct.

---

1. Plaintiff suggests that the *Slaughter–House Cases*, 83 U.S. (16 Wall.) 36, 21 L.Ed. 394 (1873), acknowledged such a right. This is not true. The judiciary has recognized 1) the right to pass freely from state to state; 2) the right to petition Congress for redress of grievances; 3) the right to vote for national officers; 4) the right to enter public lands; 5) the right to be protected against violence while in the lawful custody of a United States Marshal; and 6) the right to inform United States authorities of violations of its laws. *See Twining v. New Jersey*, 211 U.S. 78, 97, 29 S.Ct. 14, 18, 53 L.Ed. 97 (1908). *See also* L. Tribe, American Constitutional Law, 2d ed., § 7–4, at 555–56 (1988).

746, 27 L.Ed.2d 669 (1971). In the state proceeding, plaintiffs intentionally avoided raising their federal claims so as to reserve them for determination in the district court under the rule established in *England v. Board of Medical Examiners, supra.* The Second Circuit held that when the district court exercised a *Younger* abstention, if the plaintiffs did not assert their federal claims in the state proceeding, they would be barred from bringing those claims in a later federal action.[2] The conclusion reached by that court clearly indicates that due process and fair play do not require that a party always have access to a federal forum for adjudication of a federal question. There is simply no precedent for that notion.

To prevail on their removal petition, Carr and APC would need to show that they could not enforce their federal rights in the state courts assuming that these are asserted as defenses to the state's enforcement action. This, they cannot do. There are no state laws or procedures preventing APC and Carr from asserting their first amendment and equal protection defenses in state court. Even "if the motives of the officers bringing the charges [are] corrupt ... that does not show that the state trial court will find the defendant[s] guilty if [they are] innocent or that in any other manner the defendant[s] will be 'denied or cannot enforce in the courts' of the State any right under a federal law providing for equal civil rights." *City of Greenwood v. Peacock,* 384 U.S. 808, 827–28, 86 S.Ct. 1800, 1812, 16 L.Ed.2d 944 (1966). State

courts are bound to uphold the federal constitution. We are unwilling to assume that New York's fine courts will not.[3]

Although the petition does not state that removal was accomplished pursuant to § 1441(b), we will briefly address APC's contention that removal was proper because the attorney general's action "arises under" the first amendment to the Constitution. None of the causes of action in the underlying complaint are grounded in federal law but are instead based on New York statutes barring the illegal practice of medicine, unlawful operation of clinical laboratories, deceptive advertising and deceptive business practices. APC argues that all of these claims require a construction of the federal Constitution as it applies to noncommercial speech. However, this construction is raised by the defense, not by the complaint in the enforcement proceeding. For example, N.Y.Gen.Bus.L. § 349 makes deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in New York unlawful. The question of whether APC's activities fall within the scope of that statute is purely a question of state law.[4] Moreover, the fact that APC's defense may raise a constitutional question is irrelevant to the analysis. *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908). For a case to be properly removed under § 1441(b), any federal questions must be disclosed on the face of the complaint, unaided by the answer. *Phillips Petroleum Co. v. Texaco Inc.,* 415 U.S. 125, 127–28, 94 S.Ct. 1002,

---

**2.** *England* was distinguished on the basis that the abstention in that case was based on the *Pullman* doctrine, *Railroad Commission of Texas v. Pullman Company,* 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941), where the federal court stays its proceedings as opposed to dismissal as under *Younger.*

**3.** APC and Carr also suggest that that enforcement action was filed with the specific intention of blocking Carr's access to a federal forum. We note that that assertion is not supported by the record. Carr was aware as early as November, 1991, that the State was contemplating an enforcement proceeding. Absent a finding of bad faith, the federal courts are obligated to abstain from enjoining state proceedings, even if the state action was commenced after the

filing of the federal complaint. *Hicks v. Miranda,* 422 U.S. 332, 349, 95 S.Ct. 2281, 2291, 45 L.Ed.2d 223 (1975). As will be seen later, Carr is unable to show that the State acted in bad faith by filing its enforcement action.

**4.** *Gully v. First National Bank,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936) does not assist the plaintiff's argument. There, the Supreme Court observed that "not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit." *Id.,* 299 U.S. at 115, 57 S.Ct. at 99. "By impeachable authority, a suit brought upon a state statute does not arise under an Act of Congress or the Constitution of the United States because prohibited thereby." *Id.,* 299 U.S. at 116, 57 S.Ct. at 99.

1003–04, 39 L.Ed.2d 209 (1974). In the People's complaint, there are no federal questions raised. Thus, removal under § 1441(b) would not have been proper.

No fees will be awarded to the state concerning this motion. The defendants, in their removal petition, raised at least a colorable claim that federal jurisdiction was proper. Although Carr filed a federal suit in an attempt to stop the enforcement proceeding, there is no evidence that this removal was attempted in order to delay state proceedings although it has had that impact.

## III. ABSTENTION IN THE FEDERAL ACTION

We next turn to the motion to dismiss brought by the defendants in *Carr v. Axelrod*, 92 Civ. 0305. The complaint mirrors to a large degree the enforcement action brought by the State. Joseph Carr, seeking declaratory and injunctive relief, alleges that New York's Education Law §§ 6521 and 6522, Public Health Law §§ 574 and 577 and General Business Law §§ 349 and 350, the laws that New York is enforcing in the People's case, just remanded above, are unconstitutional because they are overbroad, vague, improperly applied and unrelated to any valid legislative purpose. Plaintiff also seeks damages under 42 U.S.C. § 1983, asserting that the threatened prosecutions under these statutes have had a chilling effect thereby violating his first amendment rights.

The State has moved to dismiss under the *Younger* abstention doctrine. *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669, established the principle that federal courts may not enjoin state court proceedings. Although set in the context of a criminal proceeding, the *Younger* rule has been broadened in scope to include all state civil and administrative proceedings in which the important state interests are involved. *See Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977) (civil proceeding); *Middlesex County Ethics Committee v. Garden State Bar Association*, 457 U.S. 423, 102 S.Ct. 2515, 73

L.Ed.2d 116 (1982) (state administrative proceedings).

In addition to the bar on injunctions, under *Younger*, federal courts may not provide a plaintiff with declaratory relief when there is a pending state court prosecution. *Samuels v. Mackell*, 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). This rule is based on the conclusion that "ordinarily a declaratory judgment will result in precisely the same interference with and disruption of state proceedings that the long-standing policy limiting injunctions was designed to avoid." *Id.*, 401 U.S. at 72, 91 S.Ct. at 767. Thus, a person may not seek a federal court declaratory judgment invalidating the statute underlying the state enforcement proceeding. *Id.*, 401 U.S. at 73, 91 S.Ct. at 768.

On these principles, it is clear that this court must abstain from deciding the issues raised by the plaintiff in his First through Seventh Federal Claims which challenge the constitutionality of the New York statutes. First, the state may determine that Carr and APC have not violated the state statutes, negating the need to reach the federal question. And second, the state court is competent, should it be necessary, to determine the validity of the New York laws under the United States constitution. These counts are therefore dismissed. *Id.*

In paragraphs 40 through 42 of his complaint, Carr alleges that his right to free exercise of speech is being violated in contravention of the first amendment to the United States Constitution. Significantly, Carr does not seek damages but instead seeks a declaratory judgment and injunctive relief in addition to costs and attorney's fees. Although the complaint did not state what kind of injunctive relief was being sought, shortly after filing his complaint plaintiff moved for a preliminary injunction, seeking to enjoin the enforcement action brought by the state. It is now clear that through this suit plaintiff is seeking to enjoin a state proceeding, even though he claims that the injunction is sought to protect his first amendment rights. Regardless of Carr's motive, the

principles established in *Younger* are applicable to his § 1983 claim.[5]  *See Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 10, 107 S.Ct. 1519, 1525, 95 L.Ed.2d 1 (1987); *Mitchum v. Foster*, 407 U.S. 225, 230–31, 92 S.Ct. 2151, 2155–56, 32 L.Ed.2d 705 (1972).

▮ However, the abstention mandated by *Younger* will not be observed if plaintiff can demonstrate that circumstances satisfy one of the three exceptions to the doctrine: a bad faith prosecution, patently unconstitutional state laws or the absence of an adequate state forum in which to raise the constitutional issues.  *Younger*, 401 U.S. at 53–54, 91 S.Ct. at 754–55.  The state laws are not patently unconstitutional.  *See id.* (injunction appropriate if there statute was "flagrantly and patently violative of express constitutional provisions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it"); *see State by Lefkowitz v. Fey*, 87 Misc.2d 987, 386 N.Y.S.2d 549, 550 (Sup.1976) (finding §§ 349 and 350 of the G.B.L. to be constitutional).  In addition, the plaintiff has an adequate and unbiased forum in the New York state courts to raise his constitutional and federal claims.  However, we will carefully consider the bad faith exception in light of the plaintiff's contention that the enforcement proceeding was brought to deter him from exercising his first amendment privilege to speak on the issue of abortion or on what he claims is his first amendment privilege to provide health information to women contemplating abortion.

▮ A federal court may intervene in the state enforcement proceeding only where a plaintiff shows that the irreparable injury is "great and immediate", *Younger*, 401 U.S. at 46, 91 S.Ct. at 751, and proves that harassment or prosecutions were undertaken by state officials in bad faith without no reasonable expecta-tion of prevailing upon their complaint, *see Perez v. Ledesma*, 401 U.S. 82, 85, 91 S.Ct. 674, 676, 27 L.Ed.2d 701 (1971).  Carr has not shown that he will suffer irreparable harm if the enforcement proceedings are allowed to continue.  The State is not attempting to close APC's offices but instead seeks to ensure that APC advertises its services and conducts its business in accordance with state law.  New York does not seek to preclude Carr's right to provide health information on abortion nor his right to speak against abortion.  The preliminary injunction sought by New York when its enforcement proceeding was pending in the state court requested that the court enjoin APC from, among other things, diagnosing pregnancy without a valid license to practice medicine, administering laboratory tests, advertising under the heading "Birth Control Information Centers," and "Abortion Information Services", and misrepresenting directly or by implication that APC was an abortion or birth control clinic or would make such referrals.  The State also requested that APC be required to affirmatively disclose its anti-abortion posture to potential clients.  The complaint requests the same relief.  No request has been made to limit any content-based speech.  Therefore, Carr cannot show that the enforcement proceeding will irreparably damage his first amendment right to speak on the abortion issue.

In addition, Carr cannot show that he has been harassed in bad faith by state officials.  One prosecution does not harassment make.  Instead, plaintiff must allege and prove a pattern of harassment.  *See Law Firm of Daniel P. Foster v. Dearie*, 613 F.Supp. 278, 281 (E.D.N.Y.1985).  Additionally, he must show that the procedures afforded in the state courts are inadequate to challenge the enforcement proceeding.  *See Moore v. Sims*, 442 U.S. 415, 432, 99

**5.** We do not agree with plaintiff's contention that the proper abstention doctrine to be applied here is *Pullman*.  The *Pullman* abstention is used whenever state law is uncertain and a state court's clarification of state law might make a federal court's constitutional ruling unnecessary.  *Railroad Commission of Texas v. Pullman Company*, 312 U.S. 496, 61 S.Ct. 643.  Plaintiff has not persuaded us that the New York laws concerning clinical laboratories and the practice of medicine are unsettled in light of *Bigelow v. Virginia*, 421 U.S. 809, 95 S.Ct. 2222, 44 L.Ed.2d 600 (1975).

S.Ct. 2371, 2381, 60 L.Ed.2d 994 (1979). Plaintiff cannot meet this standard.

The complaint states in vague and conclusory terms that "this threatened prosecution and harassment of plaintiff is pursuant to a policy, pattern, or practice of political and social discrimination", Complaint, at ¶ 43, and that "plaintiff and all who exercise the rights of freedom of speech, press, association, and/or express unpopular or unorthodox views on social or political issues of contemporary concern touching the problem of abortion ... are subject to this immediate threat," *id.* Plaintiff cites no specifics but makes reference to a 1987 speech given by Robert Abrams, the Attorney General, in which Abrams describes the efforts of his office to enforce state laws concerning "reproductive choice". Carr claims that this speech reflects the Attorney General's intention to shut down operations such as APC. Moreover, Carr argues that the enforcement proceedings which have been brought against other anti-abortion clinics illustrate the pattern of harassment directed against those who would express anti-abortion views.

However, there are no allegations concerning improper influences on the Attorney General's office [6] nor has plaintiff suggested the existence of any evidence which would show that the bringing of the enforcement actions is motivated at least in part by a purpose to retaliate against or deter the plaintiff's exercise of his right to speak against abortion. Indeed, the correspondence between the plaintiff and the Assistant Attorney General, appended to the complaint, suggests otherwise. These letters indicate that the State was attempting to modify how the clinics solicited and conducted business and did not intend to interfere with any speech. *See, e.g.,* Letter from W. Harrington to AGA Garin (December 31, 1991), at 2 (clinic agreed to advise client that they may refuse to see or may stop watching an anti-abortion slide show at any time). Finally, plaintiff has not alleged that the state judiciary is impermissibly biased or that there are procedural bars to the presentations of his claims. Thus, we conclude that the bad faith exception to the *Younger* doctrine is not applicable.

For all of the foregoing reasons, this action is dismissed.[7]

## CONCLUSION

In 92 Civ. 0509, defendants' motion to remand is granted. The clerk will transfer this case to the Supreme Court of New York in Westchester County. Defendants' motion to dismiss the state enforcement action is mooted by the remand. In 92 Civ. 0305, defendants' motion to dismiss is granted. Plaintiff's motion for a preliminary injunction is mooted by the dismissal.

SO ORDERED.

---

**6.** Carr notes that the Attorney General's office issued a press release on the date that the suits were filed. He claims that the preparation of a press release indicates that the Attorney General's office did not enter into the settlement negotiations in good faith and that the actions of that office were intended to promote Abrams' political aspirations. This argument does not support Carr's claim of retaliation. However, it is always interesting to note the activities undertaken by public officials when an election is at hand. At the time the enforcement action was brought, Abrams was campaigning against two women who actively support abortion rights in the Democratic primary for a seat in the United States Senate.

**7.** Although that issue is not before us, we observe that we have some doubts about whether the complaint in the federal action states a cause of action in light of recent Second Circuit law. *See, e.g., Spear v. Town of West Hartford,* 954 F.2d 63 (2d Cir.1992); *Mozzochi v. Borden,* 959 F.2d 1174 (2d Cir.1992).