**Jack S. TOBACK, Plaintiff,**

**v.**

**CITY OF LONG BEACH, Defendant.**

**No. 96–CV–3322 (JS).**

United States District Court,
E.D. New York.

Oct. 3, 1996.

Kevin J. McGill, Clifton Budd & DeMaria, New York City, for Plaintiff.

Corey E. Klein, Corporation Counsel, Long Beach, NY, for Defendant.

## ORDER

SEYBERT, District Judge:

Upon reviewing the Report and Recommendation of Magistrate Judge Michael L. Orenstein made on August 8, 1996, plaintiff's objections to the Report and Recommendation and defendant's opposition to the objections, and after hearing the parties oral arguments on October 3, 1996, the Court adopts the Report and Recommendation in its entirety and dismisses the case.

SO ORDERED.

## REPORT AND RECOMMENDATION

ORENSTEIN, United States Magistrate Judge:

Plaintiff commenced this action pursuant to 42 U.S.C. § 1983, seeking, *inter alia*, to enjoin the City of Long Beach (hereinafter

"City") from enforcing certain sections of its newly-revised noise ordinance. By Order dated July 12, 1996, District Judge Joanna Seybert directed the City to show cause before this Court why a preliminary injunction should not issue. After hearing oral argument on this matter and carefully considering the parties' submissions, the Court respectfully reports and recommends that the District Court deny the application for a preliminary injunction and abstain under the doctrine enunciated in *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971).

## BACKGROUND

Plaintiff is a religious proselytizer who conducts an outreach ministry during the summer months on the Long Beach boardwalk. His utilization of amplified sound in connection with his preaching of the Christian Gospel has generated much publicity in both Long Beach and the local media. *See, e.g.,* Barbara Chai, *Sound and Fury, Loud beach preacher attacked, arrested,* Newsday, July 8, 1996; Evelyn Nieves, *At Boardwalk, Battle Stations Over Decibels,* N.Y.Times, Aug. 4, 1996, at 33.

This is the second action in which the present parties have appeared before this Court. On July 14, 1995, after a non-jury trial, this Court held that certain of the City's permit provisions and procedures set forth in both the noise code and park regulations sections of the Long Beach Code of Regulations, with which the City had required Plaintiff to comply in order to conduct his religious activities on the boardwalk, were facially invalid, as well as unconstitutionally applied to him. *See* Opinions, Findings of Fact and Conclusions of Law, dated July 15, 1995, Orenstein, M.J., attached as Toback Aff.Ex. 1. In reaching its decision, the Court found the Long Beach boardwalk to be a traditional public forum. *Id.* at 9. Plaintiff, however, withdrew his challenge to

those sections of the noise code that provided certain maximum sound levels. *Id.* at 6 n. 2.

On May 21, 1996, the City amended Chapter 16 of the noise code. Eaton Aff. ¶ 5; "Chapter 16—Noise," attached as Eaton Aff. Ex. B; Toback Aff. Ex. 2. Newly-enacted Section 16–7 provides that "[n]o person shall cause, ... or permit the operation of any source of sound ... in such a manner as to create a sound level that exceeds the particular continuous sound level limits set forth in table 1." Table 1 fixes a maximum permissible continuous sound level of 65 decibels ("dBA") at Ocean Beach Park, which encompasses the Long Beach boardwalk.

On June 9, 1996, the City issued Plaintiff two summonses for violations of Section 16 of the Long Beach noise ordinance; the City issued Plaintiff a third summons on June 16, 1996. On June 19, 1996, Plaintiff appeared in Long Beach City Court to answer the summonses. At that time, the prosecution superseded the summonses with informations; the Court adjourned Plaintiff's arraignment for one week to enable Plaintiff to obtain counsel. Def.'s Mem. of Law in Support of Younger Abstention Ex. 1. On June 26, 1996, Plaintiff appeared with counsel for arraignment on the three informations. Plaintiff pleaded not guilty and the court, at counsel's request, granted Plaintiff forty-five days for the purpose of serving motions. The matter was adjourned to August 13, 1996.

On July 4, 1996, Plaintiff returned to the Long Beach boardwalk with a sound amplification system. The City served him with a summons for exceeding 65 dBA. On July 5, 1996, the City issued five summonses to Plaintiff for similar conduct. The sound was measured at various places as it projected from the boardwalk and at different times from 12:50 p.m. to 3:03 p.m. On July 6, 1996, Plaintiff again returned to the boardwalk with a sound amplification system. This time, Plaintiff was arrested and charged with disorderly conduct, pursuant to N.Y.Penal Law Section 240.20, subd. 2.[1] The following

---

1. Section 240.20 provides in pertinent part as follows:

   A person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof:

   . . . .

   2. He makes unreasonable noise; ...

   N.Y.Penal Law § 240.20 (McKinney 1989).

day, the City served Plaintiff with another two summonses for violation of Section 16 of the Long Beach noise ordinance, and again charged him with disorderly conduct under the New York State Penal Law.

Meanwhile, on July 5, 1996, Plaintiff filed his complaint in this action, challenging the constitutionality of that portion of the noise code which prohibits excessive noise, including the 65 dBA sound level limit set for Ocean Beach Park. He asserts that the noise code is unconstitutional on its face and as applied to him. Plaintiff seeks, *inter alia,* an injunction permanently enjoining the City from enforcing the noise ordinance, a judgment declaring the challenged sections—Sections 16–6K, 16–7 and 16–11I—to be unconstitutional under the First and Fourteenth Amendments to the United States Constitution, and nominal damages in the amount of $10.00.

The City opposes the application for a preliminary injunction and urges this court to abstain from hearing the instant case.

## DISCUSSION

### I. Requirements for a *Younger* Abstention

In *Younger v. Harris,* 401 U.S. 37, 44, 53–54, 91 S.Ct. 746, 754–55, 27 L.Ed.2d 669 (1971), the United States Supreme Court held that, absent extraordinary circumstances, principles of federalism and judicial comity require federal district courts to abstain from enjoining pending state criminal proceedings. *See also Rizzo v. Goode,* 423 U.S. 362, 379–80, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976) (" '[A] major continuing intrusion of the equitable power of the federal courts into the daily conduct of state criminal proceedings is in sharp conflict with the principles of equitable restraint which this court has recognized....' " (quoting *O'Shea v. Littleton,* 414 U.S. 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974))). In addition to preventing disruption of state court proceedings, the *Younger* doctrine is designed to protect the vital role of the state courts in the enforcement of federal law. In a companion case to *Younger,* the High Court extended the abstention principle to actions

seeking declaratory relief. *Samuels v. Mackell,* 401 U.S. 66, 91 S.Ct. 764, 27 L.Ed.2d 688 (1971). "*Younger* abstention is appropriate when: 1) there is an ongoing state proceeding; 2) an important state interest is implicated; and 3) the plaintiff has an avenue open for review of constitutional claims in the state court." *Hansel v. Town Court for Town of Springfield, New York,* 56 F.3d 391, 393 (2d Cir.), *cert. denied,* —— U.S. ——, 116 S.Ct. 572, 133 L.Ed.2d 496 (1995); *see Doe v. Connecticut Dept. Of Health Servs.,* 75 F.3d 81, 85 (2d Cir.1996).

The three requirements of a *Younger* abstention set forth in *Hansel* clearly are met in the instant case. First, Plaintiff's criminal prosecution was proceeding when he commenced this action. As a result of his alleged activities on the Long Beach boardwalk on June 9 and June 16, 1996, Plaintiff was arraigned on three charges; informations were filed and he pleaded not guilty. *Cf. Agriesti v. MGM Grand Hotels, Inc.,* 53 F.3d 1000, 1001–02 (9th Cir.1995) (finding no ongoing judicial proceeding where district attorney's office never filed citations in court; under Nevada Law, "a misdemeanor complaint issues when the misdemeanor citation is filed with a Court of competent jurisdiction").

As to the second requirement, it is beyond cavil that the City has an important interest at stake simply by virtue of the ongoing criminal prosecution. *See Hansel,* 56 F.3d at 393; *Davis v. Lansing,* 851 F.2d 72, 76 (2d Cir.1988) ("There is no question that [an] ongoing prosecution implicates important state interests: *Younger* itself settled the importance of the state's interest in criminal proceedings.")

Likewise, the third requirement of the *Younger* abstention rule also is met. Initially, the Court points out that "a federal court should assume that state procedures will afford an adequate remedy [to possible federal constitutional violations], in the absence of unambiguous authority to the contrary." *Pennzoil Co. v. Texaco, Inc.,* 481 U.S. 1, 15, 107 S.Ct. 1519, 1528, 95 L.Ed.2d 1 (1987). Here, however, the Court need not employ such a presumption because Plaintiff has ample opportunity for review of his federal con-

stitutional claims in the Long Beach City Court, a New York State court of record. *See* N.Y.Jud.Law § 2 (McKinney 1983 and Supp.1996). Even prior to becoming a New York State court of record, the Long Beach City Court passed upon constitutional claims in criminal proceedings. *See, e.g., People v. Davis*, 38 Misc.2d 771, 238 N.Y.S.2d 981 (Long Beach City Ct.1963) (dismissing information based upon defendant's claim that city ordinance prohibiting hand billing unconstitutionally interfered with his First Amendment rights). Moreover, Plaintiff is guaranteed the right to appeal in the event he is convicted. *See* N.Y.Crim.Proc.Law § 450.10 (McKinney 1994). In sum, Plaintiff will be able to raise all of his federal claims in the state court proceeding and may utilize state and federal appellate processes for judicial review, if convicted.

## II. Exceptions to the Rule of *Younger*

■ The satisfaction of the three requirements necessary to invoke the rule of *Younger* does not end the Court's analysis, because *Younger* and its progeny have established circumstances where it would be inappropriate for a federal district court to "stay its hand" pending disposition of related state proceedings:

> "*Younger* ... do[es] of course allow intervention in those cases where the District Court properly finds that the state proceeding is motivated by a desire to harass or is conducted in bad faith, or where the challenged statute is flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it."

*Moore v. Sims*, 442 U.S. 415, 424, 99 S.Ct. 2371, 2377–78, 60 L.Ed.2d 994 (1979) (internal quotations omitted) (quoting *Huffman v. Pursue, Ltd.*, 420 U.S. 592, 611, 95 S.Ct. 1200, 1212, 43 L.Ed.2d 482 (1975)); *see Cullen v. Fliegner*, 18 F.3d 96, 103 (2d Cir.) ("Intervention [by a federal court] would still be warranted upon a showing of 'bad faith, harassment or any other exceptional circumstance that would call for equitable relief.' ... [A] refusal to abstain is also justified

where a prosecution or proceeding has been brought to retaliate for or to deter constitutionally protected conduct...." (quoting *Younger*, 401 U.S. at 54, 91 S.Ct. at 755)), *cert. denied*, —— U.S. ——, 115 S.Ct. 480, 130 L.Ed.2d 393 (1994). Nevertheless, when the requirements for a *Younger* abstention are met, its reach is expansive; "[the] twin rationales of respecting prosecutorial discretion and federalism explain why the exceptions to *Younger* only provide for a 'very narrow gate for federal intervention.'" *Phelps v. Hamilton*, 59 F.3d 1058, 1064 (10th Cir.1995) (quoting *Arkebauer v. Kiley*, 985 F.2d 1351, 1358 (7th Cir.1993)); *see also Cullen*, 18 F.3d at 104 (holding bad faith exception to *Younger* abstention to be a "narrow" one).

### A. Bad Faith/Retaliation

■ Plaintiff argues that the criminal proceedings in Long Beach City Court were brought in bad faith and in retaliation for Plaintiff's successful lawsuit against the City last summer, *see Toback v. City of Long Beach*, CV 94–3298 (MLO), Opinion, Findings of Fact and Conclusions of Law, dated July 14, 1995, as well as his filing of the instant action. In support of his contention, Plaintiff cites the "well-documented" history of conflict between Plaintiff and the City, and the fact that the City served Plaintiff with multiple summonses for violating the noise code mere hours after Plaintiff served the City with his complaint in the case at bar. Moreover, according to Plaintiff, the City's present noise code was crafted carefully to frustrate Plaintiff's attempts to preach on the boardwalk.

■ Prosecutorial bad faith will be found where "the party bringing the state action [has] no reasonable expectation of obtaining a favorable outcome." *Cullen*, 18 F.3d at 103; *see Allee v. Medrano*, 416 U.S. 802, 819, 94 S.Ct. 2191, 2202, 40 L.Ed.2d 566 (1974); *Phelps*, 59 F.3d at 1065. The accusatory instruments and summonses the City served upon Plaintiff allege that he either exceeded the permissible sound level as set forth in the newly-revised City nose code, or with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof, made unreasonable noise. *See* N.Y.Penal

Law § 240.20 subd. 2 (disorderly conduct). The Court reiterates that it did not address the issue of noise or sound level in the prior federal action; in point of fact, Plaintiff withdrew his challenge to the sound level restrictions of the old City ordinance, and "no evidence was ever presented to this Court which would demonstrate that the plaintiff had violated [the noise ordinance], or that the City had attempted to measure or monitor plaintiff's activity in compliance with § 16–16 (procedure for measuring noise)." *Opinion*, dated July 14, 1995, at 6 n. 2. Moreover, the constitutionality of Section 240.20 was upheld by the New York State Court of Appeals in *People v. Bakolas*, 59 N.Y.2d 51, 462 N.Y.S.2d 844, 449 N.E.2d 738 (1983). Therefore, taken together with this Court's finding that the Long Beach noise ordinance is not patently unconstitutional, *see infra* pp. 173–175, it can hardly be said that the City authorities, in issuing the summonses to Plaintiff, had no reasonable expectation of obtaining convictions. In addition, no criminal proceedings were in progress or brought during the pendency of the prior federal action, or until June 9, 1996, after the enactment of the revised noise code.

Furthermore, the Court is persuaded by the series of correspondence between Plaintiff and the City from March to June 1996 that the City made good faith attempts to accommodate Plaintiff. *See* Eaton Aff. Exs. D, E, F, G, I, J. In response to Plaintiff's request for permits to preach on the boardwalk, the City responded that, in light of this Court's July 14, 1995 decision, permits would not be required pending a revision to the City Code. *See* Eaton Aff. Ex. E. The City further advised Plaintiff by letter dated April 8, 1996 that it had authorized him to utilize a sound amplification device on all twenty-three dates he had requested, and at the specific location he had requested. *See* Eaton Aff. Ex. G. The April 8 letter further reminded Plaintiff that he, as everyone else, would be required to keep the sound level of his amplifier at or below 65 dBA, as provided in the old ordinance. *Id.* By letter dated May 23, 1996, the City agreed to change one of the dates requested by Plaintiff for use of a sound device; the letter also advised Plaintiff that the City's noise ordinance had been amended and that a maximum sound level of 65 dBA had been set for Ocean Beach Park. *See* Eaton Aff. Ex. I.

The Court also notes that Plaintiff was not issued summonses for creating noise at a level of 66 dBA. Instead, the City issued summonses for sound levels ranging from 72 to 93 dBA. Too, notwithstanding the fact that Section 16–7 of the noise ordinance provides for measuring sound levels in Ocean Beach Park "at the center of the boardwalk at a point perpendicular to the source," two of the summonses issued arose from measurements taken from residential buildings away from the boardwalk; therefore, Plaintiff's averment that "every syllable uttered by [him] is dutifully measured by a policeman stationed twelve feet away," Pl.'s Supp. Mem. at 4, is misleading somewhat.

Finally, Plaintiff cites to the *Younger* case itself for the proposition that he will suffer irreparable injury should the court abstain from hearing this case. *Younger* stated in pertinent part as follows:

> Certain types of injury, in particular, the cost, anxiety, and inconvenience of having to defend against a single prosecution, could not by themselves be considered 'irreparable' in the special legal sense of that term. Instead, the threat to the plaintiff's federally protected rights must be one that cannot be eliminated by his defense against a single criminal prosecution.

401 U.S. at 46, 91 S.Ct. at 751. Plaintiff urges that this language suffices to establish irreparable injury because he is facing multiple charges stemming from his alleged violations of the Long Beach noise ordinance. The Court finds, however, that despite the City's service of multiple summonses upon Plaintiff, the criminal proceedings in the Long Beach City Court are, for all practical purposes, just one proceeding, and are not repetitive and harassing. Only one motion to dismiss the accusatory instruments need be made. If the City Court finds the noise ordinance unconstitutional, all of the criminal prosecutions will fail. The Court notes in this regard that it is highly possible that all of the alleged violations will be consolidated for trial. In sum, the Court concludes that,

despite the multiple charges pending against Plaintiff, they are nevertheless subject to dismissal by a single application, thereby bringing this case within the purview of *Younger's* "single prosecution" language.

Under all of the circumstances, the Court finds that the present prosecutions pending against Plaintiff were not brought in bad faith or to harass Plaintiff, or in retaliation for Plaintiff's successful prior lawsuit against the City or his commencement of the instant one.[2]

## B. Constitutionality of the Noise Ordinance

■ Plaintiff attacks the constitutionality of three provisions of the newly-enacted Long Beach noise ordinance, to wit: Sections 16–6K, 7, and 16–11I. Section 16–K prohibits "[a]ny excessive or unusually loud sound which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of a reasonable person of normal sensibilities." Section 16–7 sets forth the maximum permissible continuous sound levels for sounds emanating from various categories of property referenced in a chart annexed as "Table 1"; as noted previously, it sets a maximum sound level of 65 dBA for noise emanating from Ocean Beach Park. Section 16–7C provides that "[w]hen measuring on Ocean Beach Park noise shall be measured at the center of the boardwalk at a point directly perpendicular to the source." Finally, Section 16–11I exempts from the provisions of the noise ordinance "[n]oise generated by municipality[-]sponsored concerts and events designed to promote the health, safety or welfare of the citizens of Long Beach."

Without passing ultimate judgment on the merits of Plaintiff's claims, the Court can state with positive assurance that the Long Beach noise ordinance is not "flagrantly and patently violative of express constitutional prohibitions" so as to warrant this Court to proceed with the instant lawsuit. As to Section 16–6K, the Court points out that in *People v. Bakolas,* 59 N.Y.2d 51, 462

N.Y.S.2d 844, 449 N.E.2d 738 (1983), the New York State Court of Appeals upheld the constitutionality of N.Y.Penal Law Section 240.20, subd. 2 ("disorderly conduct"), rejecting claims that the term "unreasonable noise" was either vague or overbroad. Specifically, the court held that the term "unreasonable noise" was "not incapable of definition. Rather, it describes a noise of a type or volume that a reasonable person, under the circumstances, would not tolerate." 59 N.Y.2d at 53, 462 N.Y.S.2d 844, 449 N.E.2d 738. In so ruling, the court distinguished its holding in *People v. New York Trap Rock Corp.,* 57 N.Y.2d 371, 456 N.Y.S.2d 711, 442 N.E.2d 1222 (1982), where it struck down an ordinance that in pertinent part proscribed making "any excessive or unusually loud sound or any sound which either annoys, disturbs, injures or endangers the comfort, repose, health, peace or safety of a person." *Trap Rock,* 57 N.Y.2d at 375, 456 N.Y.S.2d 711, 442 N.E.2d 1222.

In *Bakolas,* the Court of Appeals noted that the *Trap Rock* ordinance had employed "a subjective standard—the annoyance, etc., of *a person,* rather than a neighborhood or the public—and thus was subject to enforcement according to the 'malice or animosity of a cantankerous neighbor' or the 'boiling point of a particular person.'" *Bakolas,* 59 N.Y.2d at 54, 462 N.Y.S.2d 844, 449 N.E.2d 738 (citations omitted) (quoting *Trap Rock,* 57 N.Y.2d at 380, 456 N.Y.S.2d 711, 442 N.E.2d 1222). Moreover, *Bakolas* noted that in many of the *Trap Rock* ordinance's parts, "'the pervasive nature of its catchall effect' made it capable of *ad hoc* and discriminatory enforcement and incapable of a narrowing construction." *Bakolas,* 59 N.Y.2d at 54, 462 N.Y.S.2d 844, 449 N.E.2d 738 (quoting *Trap Rock,* 57 N.Y.2d at 381, 456 N.Y.S.2d 711, 442 N.E.2d 1222). The *Bakolas* court concluded as follows:

> Here, the objective standard of public disturbance, the requirement of unreasonableness, and the narrowing effect of the fact that all of the other acts proscribed by

---

**2.** The Court recognizes that a prosecution based upon probable cause may in some instances constitute bad faith or harassment, and consequently justify a federal court's refusal to abstain. *See Cullen,* 18 F.3d at 103; *Phelps,* 59 F.3d at 1064–

65 n. 12. Having found that the prosecutions were not brought in bad faith or for purposes of harassment, however, the Court need not address this issue.

the section are publicly offensive, permit, if they do not require, [a constitutionally permissive] construction. . . .

*Id.* at 54, 462 N.Y.S.2d 844, 449 N.E.2d 738. In the instant case, Section 16–6K does not appear to suffer from the same constitutional infirmities present in the *Trap Rock* ordinance. It clearly employs an objective standard of reasonableness ("a reasonable person of normal sensibilities"). In addition, the Court cannot say that the ordinance is "incapable of a narrowing construction" that renders it subject to *ad hoc* or discriminatory enforcement.

With respect to Section 16–7, it is well-settled that a municipality has a legitimate interest in preventing unwelcome noise. *Ward v. Rock Against Racism,* 491 U.S. 781, 796, 109 S.Ct. 2746, 2756–57, 105 L.Ed.2d 661 (1989); *Carew–Reid v. Metro. Transp. Auth.,* 903 F.2d 914, 917 (2d Cir.1990) ("The elimination of excessive noise is a substantial and laudable goal."). This interest extends to traditional public forums such as the Long Beach boardwalk. *Ward,* 491 U.S. at 796, 109 S.Ct. at 2756–57; *see also Perry Educ. Ass'n v. Perry Local Educators' Ass'n,* 460 U.S. 37, 45, 103 S.Ct. 948, 955, 74 L.Ed.2d 794 (1983) (noting that "[t]he State may . . . enforce regulations of the time, place, and manner of expression [in traditional public forums] which are content-neutral, are narrowly tailored to serve a significant government interest, and leave open ample alternative channels of communication"). Moreover, a municipality's interest in noise abatement is heightened where, as here, a traditional public forum abuts residential areas. *See, e.g., Frisby v. Schultz,* 487 U.S. 474, 485, 108 S.Ct. 2495, 2502, 101 L.Ed.2d 420 (1988) ("[W]e have repeatedly held that individuals are not required to welcome unwanted speech into their own homes and that the government may protect this freedom."). With the foregoing in mind, no less a champion of First Amendment freedoms than Supreme Court Justice Hugo Black expressed the following sentiments on the use of sound amplification devices:

[O]rdinances can be drawn which adequately protect a community from unreasonable use of public speaking devices without absolutely denying to the community's citizens all information that may be disseminated or received through this new avenue for trade in ideas. I would agree without reservation to the sentiment that 'unrestrained use throughout a municipality of all sound amplifying devices would be intolerable.' And of course cities may restrict or absolutely ban the use of amplifiers on busy streets in the business area. *A city ordinance that reasonably restricts the volume of sound, or the hours during which an amplifier may be used, does not, in my mind, infringe the constitutionally protected area of free speech.*

*Kovacs v. Cooper,* 336 U.S. 77, 104, 69 S.Ct. 448, 462, 93 L.Ed. 513 (1949) (Black, J., dissenting) (emphasis added).

The City of Long Beach has "declared that the making, creation or maintenance of excessive or unreasonable noise within the City affects and is a menace to public health, comfort, convenience, safety, welfare and the prosperity of the people of the City." Noise Code, Section 16–2. As a means to achieve its legitimate goal of noise abatement, the City has enacted a scheme which Plaintiff concedes is "content-neutral on its face," i.e., all persons desiring to speak in Ocean Beach Park may do so, provided they keep their sound levels at or below 65 dBA. *Cf. Carew,* 903 F.2d at 917, 919 (upholding absolute ban on amplifiers in subway platforms and reasoning that "even though the regulation is based on a particular medium of expression and in fact is a complete ban on the use of that medium, it remains neutral with regard to the expression's content"). Nevertheless, Plaintiff contends that the noise ordinance is unconstitutional in its operation because in Ocean Beach Park, sound is measured "at the center of the boardwalk at a point directly perpendicular to the source." *See* Section 16–7C. In other categories of property, sound is measured from the property line of the receiving property. *See* Section 16–7A. Therefore, Plaintiff maintains that he is subject to a more onerous standard because of his proximity to the sound measurement device. Plaintiff's argument is not persuasive. Plaintiff himself has selected the Long Beach boardwalk as his bully pulpit, and is free to select another situs at Ocean Beach Park if

he so desires. *See Carew,* 903 F.2d at 919 ("The First Amendment ... does not guarantee [Plaintiff] access to every or even the best channels or locations for their expression.").

Finally, Plaintiff attacks the constitutionality of Section 16–11I, which exempts City-sponsored events from the strictures of the noise ordinance, on the grounds that the provision violates the First Amendment and the Equal Protection Clause. Courts have held, however, that the promotion of tourism or recreation is a legitimate governmental interest. *See New Orleans v. Dukes,* 427 U.S. 297, 304, 96 S.Ct. 2513, 2517, 49 L.Ed.2d 511 (1976); *John Donnelly & Sons v. Campbell,* 639 F.2d 6, 12 (1st Cir.1980), *aff'd,* 453 U.S. 916, 101 S.Ct. 3151, 69 L.Ed.2d 999 (1981); *Burke v. City of Charleston,* 893 F.Supp. 589, 610 (D.S.C.1995); *Astro Limousine Serv., Inc. v. Hillsborough County Aviation Auth.,* 678 F.Supp. 1561, 1565 (M.D.Fla.), *aff'd,* 862 F.2d 877 (11th Cir. 1988); *Burstyn v. City of Miami Beach,* 663 F.Supp. 528, 534 (S.D.Fla.1987). Here, the City may be able to justify exempting events such as concerts on the grounds that they serve to attract new residents or tourists to a vibrant community and/or promote recreation in the area.

In sum, the Court concludes that the newly-revised Long Beach noise ordinance is not "'flagrantly and patently violative of express constitutional prohibitions in every clause, sentence and paragraph, and in whatever manner and against whomever an effort might be made to apply it,'" *Younger,* 401 U.S. at 53–54, 91 S.Ct. at 755 (quoting *Watson v. Buck,* 313 U.S. 387, 402, 61 S.Ct. 962, 967, 85 L.Ed. 1416 (1941)), so as to require the Court to retain jurisdiction over this matter.[3]

## C. First Amendment Exception to Younger?

The Court feels constrained to address Plaintiff's assertion that "[t]he Supreme Court has been particularly reluctant to abstain in cases involving facial challenges based on the First Amendment." Pl.'s Supp.

Mem. at 1 (quoting *City of Houston v. Hill,* 482 U.S. 451, 469, 107 S.Ct. 2502, 2513–14, 96 L.Ed.2d 398 (1987)). Initially, the Court notes that, by its terms, the pertinent language from the *Hill* case does not *preclude* this Court from abstaining from the instant case. More important, *Hill* was not a *Younger* abstention case, because the plaintiff in that case brought suit in federal district court after he had been acquitted for violating the allegedly unconstitutional statute. *Hill,* 482 U.S. at 454, 107 S.Ct. at 2507. The *Younger* rule is quite clear: whenever its three requirements are met, abstention is appropriate absent a showing of bad faith prosecution, harassment or a patently unconstitutional ordinance or statute, enforcement of which will result in irreparable injury to a plaintiff. Moreover, "a federal court can[not] properly enjoin enforcement of a statute solely on the basis of a showing that the statute 'on its face' abridges First Amendment rights." *Younger,* 401 U.S. at 53, 91 S.Ct. at 755. As no criminal prosecution was pending in *Hill,* the Court did not address the exceptions to abstention enunciated in *Younger.* Additionally, the Court has found no case law according differential treatment to First Amendment cases in the *Younger* abstention context. In fact, *Younger* itself involved a facial attack on a California statute allegedly violative of First Amendment freedoms. *Younger,* 401 U.S. at 38–39, 91 S.Ct. at 747–48; *see Carr v. Axelrod,* 798 F.Supp. 168, 175–76 (S.D.N.Y.1992) (abstaining from 42 U.S.C. § 1983 action where plaintiff facially attacked state statute on ground that it violated his right to free exercise of speech), *aff'd,* 996 F.2d 302 (2d Cir.), *cert. denied,* 510 U.S. 931, 114 S.Ct. 344, 126 L.Ed.2d 308 (1993); *Lilburn v. Racicot,* 855 F.Supp. 327, 329–30 (D.Mont.1991) (same), *aff'd,* 967 F.2d 587 (9th Cir.1992).

## CONCLUSION

The Court finds that the three requirements for a *Younger* abstention have been met in this case, and that no exception to the *Younger* doctrine is applicable. Accordingly,

---

**3.** The Court wishes to emphasize that in view of its decision that abstention in this action is proper, ultimate resolution of the noise ordinance's constitutionality rests with the state criminal trial court. This Court merely has found that the ordinance is not patently unconstitutional.

this Court respectfully reports and recommends that Plaintiff's application for a preliminary injunction be **DENIED,** and that the District Court abstain from this action.

### NOTICE

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within 15 days of the date of this Report. Failure to file objections within this period waives the right to appeal the District Court's order. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72, 6(a), 6(e); *Savoie v. Merchants Bank,* 84 F.3d 52, 60 (2d Cir.1996); *IUE AFL–CIO Pension Fund v. Herrmann,* 9 F.3d 1049, 1054 (2d Cir.1993), *cert. denied,* —— U.S. ——, 115 S.Ct. 86, 130 L.Ed.2d 38 (1994); *Roldan v. Racette,* 984 F.2d 85, 89 (2d Cir.1993); *Frank v. Johnson,* 968 F.2d 298 (2d Cir.), *cert. denied,* 506 U.S. 1038, 113 S.Ct. 825, 121 L.Ed.2d 696 (1992); *Small v. Secretary of Health and Human Servs.,* 892 F.2d 15, 16 (2d Cir.1989) (per curiam).

Dated: Uniondale, New York

August 8, 1996.